1    ROB BONTA
     Attorney General of California
2    HARINDER K. KAPUR
     Senior Assistant Attorney General
3    JOSHUA B. EISENBERG
     Supervising Deputy Attorney General
4    GREGORY M. CRIBBS
     Deputy Attorney General
5    State Bar No. 175642
      300 South Spring Street, Suite 1702
6      Los Angeles, CA 90013-1230
      Telephone: (213) 269-6259
7      E-mail: Gregory.Cribbs@doj.ca.gov
     *Attorneys for Defendants*
8    *Rob Bonta, Attorney General of California*
     *and Nicole Elliott, Director of the*
9    *Department of Cannabis Control*

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| 14   **URBAN THERAPIES** | 3:23-cv-01924-TWR-AHG |
| 15   **MANUFACTURING, LLC,** **California limited liability company,** | |
| 16 | |
| 17                Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO** |
| 18   v. | **DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| 19   **NICOLE ELLIOT In Her Official** | |
| 20   **Capacity As Director Of The State Of California's Department Of Cannabis** | Date:       April 25, 2024 Time:      2:00 p.m. |
| 21   **Control; ROBERT BONTA In His Official Capacity As Attorney** | Courtroom: 3A Judge:     Hon. Todd W. Robinson Trial Date: Not set |
| 22   **General Of The State Of California; and DOES 1-10, Inclusive,** | Action Filed: October 19, 2023 |
| 23               Defendants. | |

24

25

26

27

28

1   **NOTICE OF MOTION AND MOTION TO DISMISS**

2   TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on April 25, 2024, at 2:00 p.m., in the above-

4   entitled court, Defendants Rob Bonta, in his Official Capacity as Attorney General

5   of California (hereinafter, "Attorney General") and Nicole Elliott, in her Official

6   Capacity as Director of the Department of Cannabis Control (hereinafter,

7   "Director") (hereinafter collectively, "Defendants")[1], will and hereby do move for

8   an order dismissing the entire action, with prejudice.

9   This Motion is brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) on the

10  grounds that Urban Therapies Manufacturing, LLC (hereinafter, "Plaintiff") fails to

11  plead a claim against the Attorney General because it does not allege injury and

12  causation traceable to him, and the Attorney General is immune from liability,

13  without *Ex parte Young* exception, pursuant to the Eleventh Amendment to the U.S.

14  Constitution. Moreover, as to all Defendants, because Plaintiff fails to set forth

15  allegations sufficient for this Court to exercise its jurisdiction, it should abstain

16  from hearing this case. Should this Court decline to abstain, the matter should be

17  independently dismissed based upon the doctrine of unclean hands. Finally, should

18  this Court consider this matter on the merits, Plaintiff fails to set forth sufficient

19  facts to support claims of violations of its Constitutional Rights of Equal Protection,

20  Free Speech, Vagueness, and Preemption.

21  Pursuant to Courtroom 3A's "Standing Order for Civil Cases," for the

22  Honorable Todd W. Robinson, counsel for moving party hereby provides the

23  following statement of compliance with the Motion Practice good faith meet and

24  confer requirement:

25  On December 15, 2023, counsel for the Defendants, Deputy Attorney General

26  Gregory M. Cribbs (hereinafter, "DAG Cribbs"), organized a conference call with

27  ───────────────

   [1] Defendant Attorney General Rob Bonta is erroneously named as "Robert

28  Bonta," and Defendant Director Nicole Elliott is erroneously named as "Nicole
   Elliot." See, ECF No. 10.

1   Plaintiff's counsel, Tamara Rozmus and Gina M. Austin, in an attempt to meet and

2   confer. Although there was some discussion regarding a stipulation in exchange for

3   dismissal of the Attorney General, no resolution was reached during the telephone

4   conference as to voluntary dismissal of the Attorney General and/or the issues

5   raised in the motion to dismiss, and as discussed, regarding the Director. Thus,

6   counsel were not able to reach a resolution as to the motion to dismiss.

7       This Motion is based on this Notice, the Memorandum of Points and

8   Authorities in support thereof, the papers and pleadings on file in this action, and

9   such oral argument as may be presented at the hearing.

11   Dated:  December 27, 2023                    Respectfully submitted,

                                                  ROB BONTA
                                                  Attorney General of California
                                                  HARINDER K. KAPUR
                                                  Senior Assistant Attorney General
                                                  JOSHUA B. EISENBERG
                                                  Supervising Deputy Attorney General


                                                  GREGORY M. CRIBBS
                                                  Deputy Attorney General
                                                  *Attorneys for Defendants*
                                                  *Rob Bonta, Attorney General of*
                                                  *California and Nicole Elliott, Director*
                                                  *of the Department of Cannabis Control*

SA2023803255
UTM MTD FAC 12222023.docx

Defendants' Motion to Dismiss FAC (3:23-cv-01924-TWR-AHG)

1

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1
I. Introduction and Summary .................................................................1
II. Background Facts ...............................................................................2
III. Pertinent Law ....................................................................................2
    A. Fed. R. Civ. P. 12(b)(6)..............................................................2
    B. Fed. R. Civ. P. 12(b)(1)..............................................................3
    C. Applications of Fed. R. Civ. P. 12(b)(1).....................................4
        1. Sufficient Facts and Allegations..........................................4
        2. Eleventh Amendment Immunity...........................................4
IV. Argument...........................................................................................4
    A. The Attorney General Should be Dismissed Under Rule 12(b)(6)....................................................................................4
    B. The Court Should Abstain From Exercising Its Jurisdiction in This Case ...........................................................8
        1. *Pullman* Abstention Is Proper In This Case .......................8
        2. *Burford* and *Thibodaux* Abstention Are Also Proper Here .........................................................................11
    C. The Court Should Not Contemplate Equitable Relief to Facilitate the Violation of Federal Law ..................................11
    D. Plaintiff's Claims Fail on the Merits.........................................13
        1. Plaintiff Fails to State an Equal Protection Claim..........13
        2. Plaintiff Fails to State a First Amendment Claim ..........16
        3. Plaintiff Fails to State a Void-for-Vagueness Claim......17
        4. Plaintiff Fails to State an NLRA Preemption Claim ......18
            i. The LPA Sections Are Not Preempted Under *Garmon*............................................................19
            ii. The LPA Sections Satisfy an Exemption to *Garmon*............................................................20
            iii. The LPA Sections Are Not Preempted Under *Machinsists*........................................................21
V. Conclusion.......................................................................................22

i

1

# TABLE OF AUTHORITIES

2

**Page**

3      CASES

4      *Am. Hotel & Lodging Ass'n v. City of Los Angeles*
5          834 F.3d 958 (9th Cir. 2016) ...................................................................18

6      *Ariz. DREAM Act Coal. v. Brewer*
7          855 F.3d 957 (9th Cir. 2017) ...................................................................14

8      *Artichoke Joe's v. Norton*
9          216 F. Supp. 2d 1084 (E.D. Cal. 2002) .....................................................4

10     *Ashcroft v. Iqbal*
           556 U.S. 662 (2009)....................................................................................4
11

       *Bell Atl. Corp. v. Twombly*
12         550 U.S. 544 (2007)................................................................................3, 4

13
       *Bldg. & Const. Trades Council v. Associated Builders & Contractors*
14         507 U.S. 218 (1993) ................................................................................21

15
       *Brazil v. U.S. Dep't of Navy*
16         66 F.3d 193 (9th Cir. 1995) .......................................................................5

17     *Burford v. Sun Oil Co.*
18         391 U.S. 315 (1943) ...................................................................... 1, 8, 11

19     *Cardenas v. Anzai*
20         311 F.3d 929 (9th Cir. 1999) .....................................................................4

21     *Church v. Missouri*
           913 F.3d 736 (8th Cir. 2019) .....................................................................6
22

23     *Courthouse News Serv. v. Planet*
           750 F.3d 776 (9th Cir. 2014) ...............................................................8, 10
24

25     *Ex parte Young*
           209 U.S. 123 (1908)........................................................................ 1, 6, 7
26

27     *FCC v. Beach Commc'ns, Inc.*
           508 U.S. 307 (1993)..................................................................................15

28

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fireman's Fund Ins. Co. v. City of Lodi*
   302 F.3d 928 (9th Cir. 2002) ................................................................8

*Fitts v. McGhee*
   172 U.S. 516 (1899)............................................................................6

*Gant v. Cnty. of L.A.*
   772 F.3d 608 (9th Cir. 2014) ..............................................................3

*Gearing v. City of Half Moon Bay*
   54 F.4th 1144 (9th Cir. 2022) .................................................... 10, 11

*Gonzales v. Raich*
   545 U.S. 1 (2005).................................................................................9

*Gopal v. Luther*
   No. 21-00735, 2022 WL 504983 (E.D. Cal. Feb. 18, 2022) ................8

*Green v. Mansour*
   474 U.S. 64 (1985)............................................................................12

*Hearns v. San Bernardino Police Dep't*
   530 F.3d 1124 (9th Cir. 2008) ............................................................5

*Honolulu Wkly., Inc. v. Harris*
   298 F.3d 1037 (9th Cir. 2002) ..........................................................14

*Idaho Bldg. and Const. Trades Council v. Inland Pac. Chapter of*
   *Associated Builders and Contractors, Inc.*
   801 F.3d 950 (9th Cir. 2015) ............................................................19

*Ileto v. Glock Inc.*
   349 F.3d 1191 (9th Cir. 2003) ............................................................3

*Indus. Tectonics, Inc. v. Aero Alloy*
   912 F.2d 1090 (9th Cir. 1990) ............................................................3

*Int'l Ass'n of Machinists and Aerospace Workers v. Wis. Emp't*
   *Relations Comm'n*
   427 U.S. 132 (1976)................................................................ 18, 19, 21

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Interpipe Contracting, Inc. v. Becerra*
4
    898 F.3d 879 (9th Cir. 2018) ...................................................................19

5

*Ivey v. Bd. of Regents of Univ. of Alaska*
6
    673 F.2d 266 (9th Cir. 1982) .....................................................................3

7

*Johnson v. Yellow Cab Transit Co.*
8
    321 U.S. 383 (1944).................................................................................12

9

*Knapp v. Hogan*
    738 F.3d 1106 (9th Cir. 2013) ...................................................................5

10

*Kokkoen v. Guardian Life Ins. Co. of Amer.*
11
    511 U.S. 375 (1994)..................................................................................3

12

*L.A. Cty. Bar Ass'n v. Eu*
13
    979 F.2d 697 (9th Cir. 1992) .....................................................................6

14

*Left Coast Ventures, Inc. v. Bill's Nursery Inc.*
15
    No. 19-cv-1297, 2019 WL 6683518 (W.D. Wash. Dec 6, 2019).........................8

16

*Long v. Van de Kamp*
17
    961 F.2d 151 (9th Cir. 1992) .....................................................................7

18

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*
19
    714 F.2d 946 (9th Cir. 1983) .....................................................................7

20

*Louisiana Light & Power v. City of Thibodaux*
    517 U.S. 706 (1959) .........................................................................*passim*

21

*N.Y. Tel. Co. v. Dep't of Labor*
22
    440 U.S. 519 (1979).................................................................................22

23

*Nat'l Labor Relations Bd. v. Gissel Packing Co.*
24
    395 U.S. 575 (1969)................................................................................17

25

*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*
26
    20 Cal.4th 1178 (1999) ...........................................................................17

27

*Nebbia v. New York*
28
    291 U.S. 502 (1934)................................................................................14

iv

1

## **TABLE OF AUTHORITIES**
### (continued)

2

Page

3

*Nichols v. Brown*

4

859 F. Supp. 2d 1118 (C.D. Cal. 2012) ................................................................7

5

*NLRB v. Gen. Tel. Directory Co.*

6

602 F.2d 912 (9th Cir. 1979) ...........................................................................17

7

*Northbay Wellness Group, Inc. v. Beyries*

789 F.3d 956 (9th Cir. 2015) ...........................................................................13

8

*Okpalobi v. Foster*

9

244 F.3d 405 (8th Cir. 2001) ..............................................................................6

10

*Operating Engineers v. Jones*

11

460 U.S. 669 (1983)...........................................................................................20

12

*Original Invs., LLC v. Oklahoma*

13

542 F. Supp. 3d 1230 (W.D. Okla. 2021)..........................................................12

14

*Pennhurst State Sch. & Hosp. v. Halderman*

15

465 U.S. 89 (1984)...........................................................................................5, 6

16

*Peridot Tree, Inc. v. City of Sacramento*

17

No. 22-cv-289, 2022 WL 10629241 (E.D. Cal. Oct. 18, 2022) .......... 8, 9, 10, 20

18

*Quackenbush v. Allstate Ins. Co.*

517 U.S. 706 (1996)..............................................................................................8

19

*R.R. Comm'n of Tex. v. Pullman Co.*

20

312 U.S. 496 (1941).................................................................................*passim*

21

*Ripplinger v. Collins*

22

868 F.2d 1043 (9th Cir. 1989) ...........................................................................10

23

*RUI One Corp. v. City of Berkeley*

24

371 F.3d 1137 (9th Cir. 2004) ..................................................................... 14, 15

25

*Safe Air for Everyone v. Meyer*

26

373 F.3d 1035 (9th Cir. 2004) .............................................................................3

27

28

v

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3 *San Diego Bldg. Trades Council, Millmen's Union Local 2020 v.*
4   *Garmon*
      359 U.S. 236 (1959) .............................................................. 18, 19, 20
5
6 *Seminole Tribe of Fl. v. Florida*
      517 U.S. 44 (1996) ..........................................................................6
7
8 *Sinclair Oil Corp. v. Cty. of Santa Barbara*
      96 F.3d 401 (9th Cir. 1996) .........................................................11
9
10 *Snoeck v. Brussa*
      153 F.3d 984 (9th Cir. 1998) .........................................................7
11
12 *Sofamor Danek Group, Inc. v. Brown*
      124 F.3d 1179 (9th Cir. 1997) ......................................................4
13
14 *Somers v. Apple, Inc.*
      729 F.3d 953 (9th Cir. 2013) .........................................................2
15
16 *Sprewell v. Golden State Warriors*
      266 F.3d 979 (9th Cir. 2001) .........................................................3
17
   *Summitt Med. Assocs. P.C. v. Pryor*
      180 F.3d 1326 (11th Cir. 1999) ....................................................6
18
19 *Swierkiewicz v. Sorema N. A.*
      534 U.S. 506 (2002) .......................................................................5
20
21 *Thornton v. City of St. Helens*
      425 F.3d 1158 (9th Cir. 2005) .....................................................14
22
23 *United States v. McIntosh*
      833 F.3d 1163 (9th Cir. 2016) ......................................... 10, 21, 22
24
25 *United States v. Oakland Cannabis Buyers' Co-op*
      532 U.S. 483 (2001) .....................................................................13
26
27 *United States v. Williams*
      553 U.S. 285 (2008) .....................................................................17
28

vi

# TABLE OF AUTHORITIES
### (continued)

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*
  455 U.S. 489 (1982)...................................................................18

*Wyeth v. Levine*
  555 U.S. 555 (2009)...................................................................21

**STATUTES**

21 U.S.C.
  § 841(a)(1)...............................................................................12

29 U.S.C.
  § 152(5)....................................................................................17
  § 158(a)(5)...............................................................................19
  § 158(b)(3)...............................................................................19
  § 159(a) ...................................................................................19

Cal. Bus. & Prof. Code
  §§ 26000–26325.........................................................................9
  § 26001, subd. (aa)....................................................................1
  § 26001, subd. (ab).......................................................... 16, 17, 20
  § 26051.5, subd. (a)(5)(A)-(E)....................................................1
  § 26051.5, subd. (a)(5)(D) ........................................................18
  § 26051.5, subd. (a)(5)(D)(i).....................................................15
  § 26051.5(a)(5)(E)(ii) ...............................................................17

Control, Regulate and Tax Adult Use of Marijuana Act .........................9

Controlled Substances Act ......................................... 1, 9, 12, 13

Medicinal and Adult-Use Cannabis Regulation and Safety Act...................... 2, 5, 6

National Labor Relations Act ................................................*passim*

vii

1
2

**TABLE OF AUTHORITIES**
(continued)

3

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution
    First Amendment........................................................... 10, 14, 16, 17
    Fifth Amendment ................................................................. 2, 13, 14
    Eleventh Amendment............................................................ 1, 4, 6, 7
    Fourteenth Amendment ............................................................ *passim*

**COURT RULES**

Fed. R. Civ. P.
    § 8........................................................................................4, 5
    § 8(a)(2)....................................................................................5
    § 8(d)(1) ...................................................................................5
    § 12(b)(1) ...........................................................................3, 4, 8
    § 12(b)(6) ........................................................................ 2, 3, 4, 8

**OTHER AUTHORITIES**

Cal. Code of Regs.
    §15002....................................................................................1
    §15023....................................................................................1
    §17801....................................................................................1

Case No. 2023-LPA-001, 49 ALRB No. 3 (July 6, 2023)................................ 15, 18

Labor Peace Agreement Sections .................................................. *passim*

*Richard A. Epstein, In Defense of the Contract at Will*, 51 U. Chi. L.
    Rev. 947 (1984)............................................................................18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY

Plaintiff's "First Amended Complaint for Declaratory and Injunctive Relief" (hereinafter, "FAC") seeks this Court's declaration that certain portions of the State's statutory and regulatory scheme for cannabis businesses,[2] referred to collectively as the Labor Peace Agreement sections (hereinafter, "LPA Sections"), are "unconstitutional under the United States Constitution."[3] FAC, ¶ 1. In doing so, Plaintiff alleges that the Attorney General is the "chief law officer" of the state, and that he has "direct supervision over every district attorney," but does not identify any alleged duty or authority of any district attorney and/or the Attorney General in connection with the LPA Sections, or *any* alleged wrongful conduct. FAC, ¶¶ 1-2. As a result, the FAC - against the Attorney General - warrants dismissal because Plaintiff cannot legitimately invoke the *Ex parte Young* exception to the Attorney General's immunity from suit under the U.S. Constitution's Eleventh Amendment (hereinafter, the "Eleventh Amendment").

Beyond dismissing the Attorney General, this Court should abstain from hearing this matter under the *Pullman*, *Burford*, and *Thibodaux* abstention doctrines. Alternatively, if this Court were instead to exercise jurisdiction over this matter, the Court should dismiss this action under the doctrine of unclean hands, without reaching the merits, because Plaintiff invokes the Court's equitable powers to facilitate federally illegal conduct. And even if the Court were to reach the merits, Plaintiff fails to state a claim on the merits in all respects. For these reasons, the Court should abstain or dismiss.

---

[2] California law generally uses the term "cannabis." The federal Controlled Substance Act uses the term "marihuana" or "marijuana." For purposes of this motion, these three terms are used interchangeably.

[3] California Business and Professions Code sections 26001, subdivision (aa) and 26051.5, subdivision (a)(5)(A)-(E), and Title 4, California Code of Regulations, sections 15002, 15023, and 17801. FAC, ¶ 1.

1

## II. BACKGROUND FACTS

According to Plaintiff's FAC, Plaintiff (1) is a limited liability company that manufactures cannabis, (2) is a "licensee" as defined in California Business and Professions Code section 26001, subdivision (ad), and, (3) is subject to California Department of Cannabis Control (hereinafter, "DCC") regulations as the "licensing authority" pursuant to California Business and Professions Code section 26001, subdivision (ae). FAC, ¶ 5. In addition, Plaintiff names as a defendant the Director of the Department of Cannabis Control, which it also alleges "is the single state agency designated by the State of California for administering and enforcing the LPA Sections," and which, "evaluates whether an applicant qualifies for licensure, issues licenses, and enforces violations to include violations of the LPA Sections." FAC, ¶ 6. Plaintiff identifies and acknowledges that the Medicinal and Adult-Use Cannabis Regulation and Safety Act (hereinafter, "MAUCRSA"), which includes the LPA Sections, is "administered and enforced by the DCC." FAC, ¶ 11.

Plaintiff further alleges that the LPA Sections are unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution, and are preempted by the National Labor Relations Act (hereinafter, "NLRA"), and various related case law. FAC, ¶¶ 50-59. However, as to the Attorney General, the FAC contains *no* legally relevant mention of, let alone allegations against, the Attorney General, nor any indication why Plaintiff is pursuing this matter against the Attorney General.

## III. PERTINENT LAW

### A. Fed. R. Civ. P. 12(b)(6)

A defendant is entitled to dismissal of an action under Federal Rule of Civil Procedure, rule 12(b)(6) (hereinafter, "Rule 12(b)(6)") where the plaintiff (1) has failed to state a cognizable legal theory, or (2) has alleged insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). In evaluating a Rule 12(b)(6) motion, the court accepts as true all material facts

2

1   alleged in the complaint and interprets them in the light most favorable to the non-

2   moving party. *Gant v. Cnty. of L.A.,* 772 F.3d 608, 614 (9th Cir. 2014). However,

3   the court does not accept as true "unreasonable inferences or assume the truth of

4   legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349

5   F.3d 1191, 1200 (9th Cir. 2003); *see also Sprewell v. Golden State Warriors*, 266

6   F.3d 979, 988 (9th Cir. 2001) (explaining that the court need not "accept as true

7   allegations that are merely conclusory, unwarranted deductions of fact, or

8   unreasonable inferences").

9        "Vague and conclusory allegations of official participation in civil rights

10  violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of

11  Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Bell Atl.

12  Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that to survive a Rule

13  12(b)(6) motion to dismiss, the pleading's "[f]actual allegations must be enough to

14  raise a right to relief above the speculative level").

15       **B.   Fed. R. Civ. P. 12(b)(1)**

16       Federal Rule of Civil Procedure, rule 12(b)(1) (hereinafter, "Rule 12(b)(1)")

17  permits dismissal of a complaint for lack of subject-matter jurisdiction. *See Safe Air

18  for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A Rule 12(b)(1)

19  motion may be a facial attack asserting "that the allegations in the complaint are

20  insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

21  Even though a Rule 12(b)(1) motion is brought by a litigant seeking dismissal of an

22  adverse complaint for lack of subject-matter jurisdiction, "[t]he [opposing] party

23  asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus.

24  Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v.

25  Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court

26  presumes lack of jurisdiction until the party invoking the court's jurisdiction proves

27  otherwise. *Kokkoen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994).

28

C. **Applications of Fed. R. Civ. P. 12(b)(1)**

A Rule 12(b)(1) motion is appropriately used to resolve at least two kinds of subject-matter jurisdiction issues which are applicable here: (1) allegations must be sufficient enough to plausibly – not merely possibly – allow the reasonable inference that the defendant is liable for the misconduct alleged, and/or (2) immunity under the Eleventh Amendment to the U.S. Constitution.

1. **Sufficient Facts and Allegations**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(1) and/or Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain sufficient factual matter, accepted as true, to plausibly – not merely possibly – allow the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678-679.

2. **Eleventh Amendment Immunity**

The Eleventh Amendment generally bars lawsuits in federal courts against officials of U.S. states, without the officials' consent. *See Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 1999); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110-11 (E.D. Cal. 2002). Eleventh Amendment immunity is properly determined on a Rule 12(b)(1) motion. *See Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 n.2 (9th Cir. 1997).

IV. **ARGUMENT**

A. **The Attorney General Should be Dismissed Under Rule 12(b)(6)**

Plaintiff's FAC against the Attorney General should be dismissed because it does not meet the pleading requirements set forth in Rule 8 and the Attorney General is entitled to sovereign immunity. Rule 8 requires a plaintiff to set forth a short and plain statement of each of its claims showing that it is entitled to relief, as

4

well as allegations that are simple, concise, and direct. Fed. R. Civ. P., §§ 8(a)(2), 8(d)(1); *see also Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1127 (9th Cir. 2008) (characterizing the requirements set forth in Rule 8(a)(2) as a "right and duty of a plaintiff initiating a case"). Dismissal is appropriate if a complaint does not comply with these pleading requirements. *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). Even applying liberal pleading standards, "pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Hence, Rule 8 mandates that plaintiff allege facts that demonstrate how it was denied its constitutional rights, *and by whom. See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (reiterating that Rule 8(a)(2) requires complaints to contain a statement that gives each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Plaintiff's FAC fails to satisfy those pleading requirements. Other than identifying the Attorney General as the "chief law officer" of the state, the FAC does not plead any facts or allegations that he engaged in alleged wrongful conduct and/or that he has any involvement with, or authority over the LPA Sections set forth in MAUCRSA. In short, and among other things, the complete lack of such facts and allegations preclude the Attorney General from mounting a defense to Plaintiff's purported claims. Moreover, at a minimum, Rule 8 mandates that Plaintiff identify the responsible party or parties, and allege facts that connect the identified responsible party or parties to a violation of law. Such a *minimum* pleading requirement would provide the Attorney General fair notice of what the Plaintiff's claims are and the factual basis upon which they rest. As illustrated above, the complete lack of any facts or allegations pled against a party is simply not permissible under the Federal Rules of Civil Procedure.

Moreover, as to the Attorney General, sovereign immunity generally prohibits lawsuits against states and state officers in federal court. *Pennhurst State Sch. &*

1   *Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Sovereign immunity bars all suits

2   against the state regardless of the relief sought, including declaratory and injunctive

3   relief. *See id.* at 101; *Seminole Tribe of Fl. v. Florida,* 517 U.S. 44, 58 (1996). State

4   sovereign immunity applies unless the state has unequivocally consented to such a

5   suit or Congress has abrogated the state's immunity. *See, e.g., Church v. Missouri,*

6   913 F.3d 736, 743 (8th Cir. 2019). Neither has happened here.

7       The Supreme Court has recognized a limited exception to Eleventh

8   Amendment sovereign immunity in *Ex parte Young,* 209 U.S. 123 (1908), which

9   permits actions for prospective declaratory or injunctive relief against state officers

10  sued in their official capacities for their alleged violations of federal law. Even

11  assuming *Ex parte Young's* exception can apply to overcome a state's general

12  sovereign immunity, its requirements are not met here. For the *Ex parte Young*

13  exception to apply, the state official sued must have direct responsibility for

14  enforcement of the allegedly unconstitutional statute. *Okpalobi v. Foster,* 244 F.3d

15  405, 416-417 (8th Cir. 2001) (en banc); *Summitt Med. Assocs. P.C. v. Pryor,* 180

16  F.3d 1326, 1341-42 (11th Cir. 1999). General executive responsibility or general

17  enforcement powers are not enough. *See, e.g., Church,* 913 F.3d at 748; *Fitts v.*

18  *McGhee,* 172 U.S. 516, 530 (1899); *L.A. Cty. Bar Ass'n v. Eu,* 979 F.2d 697, 704

19  (9th Cir. 1992).

20      Here, Plaintiff fails to allege a sufficiently direct connection with the Attorney

21  General and the administration or enforcement of the LPA Sections set forth in

22  MAUCRSA. Plaintiff solely cites to the Attorney General's title as "chief law

23  officer" of the state and his general duty of having "direct supervision over every

24  district attorney."[4] FAC, ¶ 7. But courts have repeatedly held that such general

25  powers are not sufficient to establish the connection required for application of the

26  *Ex parte Young* exception. "It is well established that 'a generalized duty to enforce

27

28      [4] Plaintiff fails to identify *any* connection, law enforcement or otherwise, between the LPA Sections and district attorneys.

6

1   state law or general supervisory power over the persons responsible for enforcing

2   the challenged provision will not subject an official to suit.'" *Nichols v. Brown*, 859

3   F. Supp. 2d 1118, 1131–32 (C.D. Cal. 2012) (quoting *Snoeck v. Brussa,* 153 F.3d

4   984, 986 (9th Cir. 1998)); *see also Los Angeles Branch NAACP v. Los Angeles*

5   *Unified School Dist.,* 714 F.2d 946, 953 (9th Cir. 1983) (holding the governor's

6   "general duty to enforce California law ... does not establish the requisite

7   connection between him and the unconstitutional acts" alleged in suit). Unless the

8   state officer has some responsibility to enforce the statute or provision at issue, the

9   "fiction" of *Ex parte Young* cannot operate. Only if a state officer has the authority

10  to enforce an unconstitutional act in the name of the state can the Supremacy

11  Clause be invoked to strip the officer of official or representative character and

12  subject them to the individual consequences of their conduct. *Long v. Van de Kamp,*

13  961 F.2d 151, 152 (9th Cir. 1992).

14      For a state official to be legitimately subject to a lawsuit in federal court

15  challenging the official's oversight of a state law (in the "*Ex parte Young*"

16  exception to the Eleventh Amendment), not only must the official have a "fairly

17  direct" connection with the enforcement of the law, but also "there must be a real

18  threat of enforcement… Absent a real likelihood that the state official will employ

19  his [or her] powers against plaintiffs' interests, the Eleventh Amendment bars

20  federal court jurisdiction." *Id.*; *Snoeck,* 153 F.3d at 987 ("[T]he officers of the state

21  must…threaten or be about to commence civil or criminal proceedings to enforce

22  an unconstitutional act"). For those reasons, Plaintiff has failed to satisfy federal

23  pleading requirements against the Attorney General and furthermore, under the

24  Eleventh Amendment jurisprudence cited above, the Attorney General is immune to

25  Plaintiff's FAC.

26

27

28

**B.      The Court Should Abstain From Exercising Its Jurisdiction in This Case**

· The Court should abstain from exercising its jurisdiction as to all Defendants.[5] To be sure, a federal court ordinarily has "a strict duty to exercise the jurisdiction that is conferred . . . by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). But the Supreme Court has recognized that "federal courts may decline to exercise their jurisdiction in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Id.* (citation omitted). Such is the case here, under the *Pullman, Burford*, and *Thibodaux* abstention doctrines.[6]

**1.      *Pullman* Abstention Is Proper In This Case**

Under the *Pullman* abstention doctrine, federal courts should decline to hear cases about the constitutionality of state law where all of the following apply: (1) the case involves a sensitive area of social policy; (2) a state court ruling could obviate the need to resolve the federal question; and (3) the meaning of state law is uncertain. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928 (9th Cir. 2002). Several factors weigh in favor of applying *Pullman* abstention in this case.

· First, the legalization and regulation of California's cannabis industry, as a matter of state law, involves a sensitive area of state social policy that is best left to the state to address. California is widely regarded as a "pioneer" in the regulation of

---

[5] The Ninth Circuit has "not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1), both, or neither." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). The Court need not resolve this question here, because abstention is appropriate under any available standard.

[6] Other federal district courts in the Ninth Circuit have abstained in cases involving state-regulated cannabis businesses. *See, e.g., Peridot Tree, Inc. v. City of Sacramento*, No. 22-cv-289, 2022 WL 10629241, at *9 (E.D. Cal. Oct. 18, 2022); *Left Coast Ventures, Inc. v. Bill's Nursery Inc.*, No. 19-cv-1297, 2019 WL 6683518, at *2 (W.D. Wash. Dec 6, 2019); *Gopal v. Luther*, No. 21-00735, 2022 WL 504983, at *4 (E.D. Cal. Feb. 18, 2022). Although these courts have tended to treat these abstention issues as novel, this is unnecessary: as discussed herein, abstention in this context is consistent with existing abstention doctrines under *Pullman, Burford*, and *Thibodaux*.

Defendants' Motion to Dismiss FAC (3:23-cv-01924-TWR-AHG)

cannabis as a matter of state law: for example, it was one of the first states to decriminalize cannabis use, as a matter of state law, for medical purposes. *See Gonzales v. Raich*, 545 U.S. 1, 5 (2005) (citing 1913 Cal. Stats. Ch. 342 § 8a). In 2016, California voters likewise moved to legalize and regulate non-medical cannabis. *See* Control, Regulate and Tax Adult Use of Marijuana Act (Prop. 64), 2016 Cal. Legis. Serv. Prop. 64 (West). Since then, California has undertaken a comprehensive regulatory effort to ensure that cannabis businesses in California are regulated in ways that protect children, workers, consumers, public safety, the environment, and other important public interests. *See* Cal. Bus. & Prof. Code §§ 26000–26325; *see also Peridot Tree, Inc. v. City of Sacramento*, No. 22-cv-289, 2022 WL 10629241, at *5–6 (E.D. Cal. Oct. 18, 2022) (briefly summarizing certain aspects of California's "deliberate and extensive regulatory effort"). As other district courts have recognized, "California's interests are clear and substantial: it has passed a wide-ranging and complex program designed to foster, regulate, and tax a new cannabis industry." *Id.* at *8. These kinds of regulatory interests— protecting children, the environment, workers, consumers, and public safety, while combating unregulated businesses that threaten those same public interests—are of the utmost importance to California.

Conversely, under the first *Pullman* factor, there is no countervailing federal interest here—or, at least, none that helps Plaintiff. Under federal law, marihuana remains classified as a Schedule I controlled substance: its manufacture, distribution, or possession is a federal criminal offense. Consequently, each and every business involved in the cultivation, manufacture, distribution, or possession of cannabis is in violation of the federal Controlled Substances Act as a matter of federal law, even if it is operating in compliance with state law. At most, this leaves the question of federal interests here "murky: Congress has strictly and unambiguously prohibited all commerce in marijuana, but in recent years, the political branches have expressed no interest in enforcing that prohibition." *Peridot*

9

1   *Tree*, 2022 WL 10629241, at *8. Additionally, to the extent Congress has clarified

2   the relevant federal interests, it has (as a matter of federal law) fostered respect for

3   states' interests in regulating cannabis business: Congress has acted to shield

4   medical cannabis businesses from federal prosecution if, and only if, they "strictly

5   comply with *all* state-law conditions regarding the use, distribution, possession, and

6   cultivation of medical marijuana." *United States v. McIntosh*, 833 F.3d 1163, 1178

7   (9th Cir. 2016) (emphasis added). Thus, far from outweighing California's interests

8   in regulating the cannabis industry, federal law actually respects and reinforces

9   those same interests.[7]

10       The other *Pullman* factors are also satisfied. The second *Pullman* factor

11   requires only that state-court proceedings "may reduce the contours of the federal

12   litigation." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1150 (9th Cir. 2022).

13   In particular, this factor is satisfied when state-court proceedings "will require the

14   state court to interpret" a challenged state law, and that interpretation is "also

15   relevant to the federal claims." *Id.* at 1151. This is the case here. A California court

16   could—for the first time—authoritatively construe the LPA Sections. *See Peridot*

17   *Tree*, 2022 WL 10629241, at *9–10 (observing that California courts, unlike federal

18   courts, "have not expressed . . . concerns about adjudicating cannabis disputes").

19   And California courts' interpretation of the LPA Sections could (for example) be

20   relevant to Plaintiff's void-for-vagueness and First Amendment claims: California

21   courts could confirm LPA Sections' plain meaning (*see infra*, Part IV.D.3), and

22   confirm that this plain meaning does not restrict protected speech (*see infra*, Part

23   IV.D.2).

24   ──────────
         [7] Although "*Pullman* abstention is generally inappropriate when First
25   Amendment rights are at stake," this is so "because the guarantee of free expression
     is always an area of particular federal concern." *Courthouse News. Serv. v. Planet*,
26   750 F.3d 776, 784 (9th Cir. 2014). As discussed above, however, state interests in
     regulating cannabis businesses are unusually strong, and federal interests are
27   unusually murky—and, in fact, arguably reinforce the states' own interests. Under
     these unusual circumstances, *Pullman* abstention is justified even as to Plaintiff's
28   First Amendment claim. *Cf. Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir.
     1989) (upholding *Pullman* abstention even in the First Amendment context).

The third *Pullman* factor is satisfied for similar reasons. This factor can be satisfied where state-law questions "raise a novel claim of statutory interpretation." *Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 410 (9th Cir. 1996). This is the case here: no California court has yet interpreted the challenged LPA Sections. And the fact that state-law cannabis regulations (like state-law land use regulations) are "localized and complex" further bolsters the conclusion that this factor is satisfied: where state law is "localized and complex," the Ninth Circuit has required "only a minimal showing of uncertainty." *Gearing*, 54 F.4th at 1151.

Because the three *Pullman* factors are satisfied, this Court should decline to exercise its jurisdiction under the *Pullman* abstention doctrine.

### 2. *Burford* and *Thibodaux* Abstention Are Also Proper Here

Alternatively, the Court should abstain under *Burford* and *Thibodaux*. When cases raise issues intimately involved with a States' sovereign prerogative (*see Louisiana Light & Power v. City of Thibodaux,* 517 U.S. 706 (1959)), or present significant implications for sensitive state policies (*see Burford v. Sun Oil Co.,* 391 U.S. 315 (1943)), federal courts should abstain from adjudicating these cases if the state court is in a better position to protect the state's interest. Here, California has exercised its sovereign prerogative to determine what conduct will be prohibited and permitted under its own state laws. And as discussed above, California's interest in regulating the cannabis industry is sensitive and complex. These considerations support abstention under *Burford* and *Thibodaux*.

In sum, this Court should abstain from hearing this matter, as California's commercial cannabis matters are better adjudicated by its own state courts.

### C. The Court Should Not Contemplate Equitable Relief to Facilitate the Violation of Federal Law

Even if this Court were to exercise jurisdiction over this case, it should dismiss Plaintiff's claims under the doctrine of unclean hands. Under that doctrine, "a federal court should not, in an ordinary case, lend its judicial power to a plaintiff

11

who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). Here, Plaintiff seeks exactly that: Plaintiff seeks equitable relief to facilitate cannabis manufacturing, in violation of the Controlled Substances Act.[8]

Because cannabis activity is illegal under federal law, federal courts generally should not use their equitable powers to facilitate such activity—including Plaintiff's cannabis activity here. Under federal law, it is unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," including cannabis. 21 U.S.C. § 841(a)(1). Plaintiff freely admits to violating this federal law: Plaintiff acknowledges that it "manufactures cannabis." FAC, ¶ 5. And Plaintiff seeks equitable relief that would directly facilitate this same activity: for example, Plaintiff seeks to maintain its "right to do business" as a cannabis business under California state law (FAC, ¶ 46), to maximize its control over workers in the cannabis industry (FAC, ¶ 31–32, 47), and to avoid "increasing [the] costs" of carrying on its federally illegal enterprise (FAC, ¶ 47). This Court should not use its equitable powers to facilitate federally unlawful activity in this way, and should dismiss Plaintiff's claims on that basis. *Cf. Original Invs., LLC v. Oklahoma*, 542 F. Supp. 3d 1230, 1233–37 (W.D. Okla. 2021) (granting a motion to dismiss federal-law claims seeking equitable relief to facilitate the operation of a cannabis business).

Although the Ninth Circuit has recognized two potential reasons to depart from the general rule that federal courts should not use their equitable powers to facilitate the violation of federal law, neither reason is present here.

---

[8] Although Plaintiff also seeks declaratory relief, "[t]he propriety of issuing a declaratory judgment may depend upon equitable considerations." *Green v. Mansour*, 474 U.S. 64, 72 (1985). Here, Plaintiff's request for declaratory relief (declaring the LPA Sections invalid) is intertwined with its request for equitable relief (enjoining the LPA Sections' enforcement). The same equitable considerations therefore counsel against Plaintiff's request for declaratory relief.

First, this is not a case where the Defendants' alleged wrongdoing outweighs the Plaintiff's. *See Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015) (citing *Yellow Cab*, 321 U.S. at 387). In *Northbay*, the Ninth Circuit rejected application of the unclean hands doctrine in the face of truly extraordinary wrongdoing by the defendant: an attorney (subsequently disbarred) not only personally participated in a cannabis business's unlawful activity, but also "stole $25,000 from his client." *Id.* at 960–61. Here, by contrast, Plaintiff alleges no comparable wrongdoing by Defendants.

Second, this is not a case where application of the unclean-hands doctrine "would frustrate a substantial public interest." *Id.* at 960 (quoting *EEOC v. Recruit USA, Inc.*, 939 F.3d 746, 753 (9th Cir. 1991)). The interests that Plaintiff identifies—the unfettered operation of its business and the minimization of its costs—are Plaintiff's private business interests. Indeed, under the Controlled Substances Act, it is doubtful whether there is any federally cognizable public interest in the operation of a cannabis business. *Cf. United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001) (rejecting a public-interest argument in favor of sick patients' access to medically necessary cannabis, in light of the Controlled Substances Act).

In sum, the FAC should be dismissed under the doctrine of unclean hands.

**D.   Plaintiff's Claims Fail on the Merits.**

Even if this Court were to reach the merits of Plaintiff's claims (which, for the reasons discussed above, it should not), each of those claims fails on the merits.

**1.   Plaintiff Fails to State an Equal Protection Claim**

Plaintiff fails to state an Equal Protection claim. Plaintiff alleges that the LPA Sections violate the Equal Protection Clause guarantees by "favoring unions desiring to advance their cause with employees while requiring UTM to remain silent and forego free speech if questioning unionization" and by "treating all California employers that meet the [10- or 20-employee] employee threshold for the

13

1   Labor Peace Agreement differently" from smaller cannabis employers. FAC, ¶ 53.

2   Plaintiff's allegations do not support a violation of the Equal Protection Clause.

3        As an initial matter, Plaintiff's first distinction—the distinction between labor

4   unions and cannabis businesses—is unavailing because those two groups are not

5   similarly situated. To state an Equal Protection claim, "plaintiffs must show that *a*

6   *class that is similarly situated* has been treated disparately." *Ariz. DREAM Act*

7   *Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (emphasis added). "The groups

8   must be comprised of similarly situated persons so that the factor motivating the

9   alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d

10   1158, 1167 (9th Cir. 2005). But labor unions (which seek to organize workers) and

11   for-profit cannabis businesses (which employ them to operate in a new and

12   federally unlawful industry) are not similarly situated. *Cf. Nebbia v. New York*, 291

13   U.S. 502, 521 (1934) (rejecting an Equal Protection challenge because—even as

14   between different businesses in the same industry—"there are obvious distinctions

15   between the two sorts of merchants which may well justify a difference in

16   treatment").

17        Moreover, both distinctions Plaintiff identifies—labor unions vs. cannabis

18   businesses; larger cannabis businesses vs. smaller cannabis businesses—are subject

19   only to rational basis review. As to the latter, the Ninth Circuit has specifically

20   applied rational basis review to a classification based, as relevant here, on "number

21   of employees." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir.

22   2004). And because the distinction between labor unions and cannabis businesses

23   "does not concern a suspect or semi-suspect class or a fundamental right"—as

24   discussed below, Plaintiff's First Amendment claim lacks merit (*see infra*, Part

25   IV.D.2)—rational basis review likewise applies there. *Honolulu Wkly., Inc. v.*

26   *Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).

27        The challenged distinctions easily survive rational basis review. Under rational

28   basis review, a challenged classification "must be upheld against equal protection

1  challenge if there is any reasonably conceivable state of facts that could provide a

2  rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307,

3  313 (1993). "[I]t is entirely irrelevant for constitutional purposes whether the

4  conceived reason for the challenged distinction actually motivated the legislature."

5  *Id.* at 315. Here, it is easy to conceive of reasons to distinguish between employers

6  (particularly employers engaged in the ongoing violation of federal law) and

7  organizations representing workers. As California's Agricultural Labor Relations

8  Board recognized in this same context, "[i]t is reasonable to believe the Legislature

9  added these requirements to support workers in the nascent cannabis industry[,]

10  which was emerging from an underground illegal marketplace and transforming

11  into a legal, above-ground professional industry." Case No. 2023-LPA-001, 49

12  ALRB No. 3, at p. 19 (July 6, 2023).[9] It is likewise easy to conceive of reasons to

13  distinguish between businesses on their number of employees—as countless state

14  and federal laws already do. Such legislative line-drawing between regulated

15  businesses is "virtually unreviewable, since the legislature must be allowed leeway

16  to approach a perceived problem incrementally." *Beach Commc'ns*, 508 U.S. at

17  316; *see also RUI*, 371 F.3d at 1155.[10]

18      In sum, Plaintiff fails to state an Equal Protection claim.

19

20

21

22  [9] A true and correct copy of the ALRB Decision is attached as Attachment "2" to the International Brotherhood of Teamsters Notice of Motion and Motion to Intervene [ECF No. 13.]

23  [10] For example, the Legislature could conclude that larger businesses are likely to be more formal or impersonal than smaller businesses, and therefore

24  require more formal regulations to ensure that workers' rights are respected. Or the Legislature could simply conclude that focusing on larger businesses is more likely

25  to protect a larger number of workers in absolute terms. Indeed, the Legislature might well have concluded that it would be best to subject *all* cannabis businesses

26  to the LPA Sections, but that it is prudent "to approach a perceived problem incrementally" (*Beach Commc'ns*, 508 U.S. at 316) by gradually lowering the LPA

27  employee threshold over time—as in fact the Legislature has already moved to lower that threshold from 20 employees to 10 employees. *See* Cal. Bus. & Prof.

28  Code § 26051.5(a)(5)(D)(i).

### 2.    Plaintiff Fails to State a First Amendment Claim

Plaintiff fails to state a First Amendment claim. Plaintiff alleges that the LPA Sections impermissibly chill protected speech by "being so vague" and by "imposing a prior content based restraint on constitutionally protected expression" thereby "repressing UTM's expression concerning the merits of unionization." FAC, ¶ 52. Plaintiff points to no specific facts supporting these claims, and the LPA Sections do not support it.

Contrary to Plaintiff's conclusory allegations, the LPA Sections do not restrict Plaintiff's protected speech. The LPA Sections impose limited requirements on the content of an LPA, leaving cannabis businesses and labor organizations free to negotiate their remaining provisions. And none of the required provisions restrict Plaintiff's protected speech. One required provision restricts "labor organizations and members" from "engaging in picketing, work stoppages, boycotts, and any other economic interference with the applicant's business," while imposing no limitation on businesses or their owners. Cal. Bus. & Prof. Code § 26001(ab). Another required provision protects employees' free-speech rights, without limiting speech by their employers: cannabis businesses must "provide . . . access at reasonable times to areas in which the applicant's employees work, for the purpose of meeting with employees to discuss their right to representation, employment rights under state law, and terms and conditions of employment." *Id.*

The same is true of the requirement that a cannabis business "agree[] not to disrupt efforts by the bona fide labor organization to communicate with, and attempt to organize and represent, [the business's] employees." *Id.* In requiring an employer not disrupt such efforts, the LPA Sections parallel NLRA provisions that forbid an employer to "interfere with, restrain, or coerce employees" exercising certain labor rights, or to "dominate or interfere with the formation or administration of any labor organization." NLRA Section 8(a)(2) (29 U.S.C. § 158(a)(1), (2)). These provisions have long been harmonized with, and upheld

16

1   under, the First Amendment. *See Nat'l Labor Relations Bd. v. Gissel Packing Co.*,

2   395 U.S. 575, 618 (1969); *NLRB v. Gen. Tel. Directory Co.*, 602 F.2d 912, 914–15

3   (9th Cir. 1979). Nothing in the LPA Sections suggests any departure from these

4   time-tested First Amendment standards. Nor is there any reason to think that

5   California courts would impose such a reading on the statute: on the contrary,

6   California courts "must construe [state law] in a fashion that avoids rendering its

7   application unconstitutional." *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*,

8   20 Cal.4th 1178, 1216 (1999).

9       In sum, Plaintiff has not identified anything in the LPA Sections that infringes

10  on Plaintiff's First Amendment rights.

11          **3.    Plaintiff Fails to State a Void-for-Vagueness Claim**

12      Plaintiff also fails to state a void-for-vagueness claim. According to Plaintiff,

13  the LPA Sections are impermissibly vague because of the terms "labor peace

14  agreement," "labor organization," and "bona fide labor organization." FAC, ¶ 35.

15  But the LPA Sections expressly and clearly define the terms "labor peace

16  agreement" and "Labor Organization." Cal. Bus. & Prof. Code § 26001(ab) ("labor

17  peace agreement"); *id.* § 26051.5(a)(5)(E)(ii) ("labor organization").[11] Plaintiff does

18  not identify anything in these definitions that is "so standardless that it authorizes or

19  encourages seriously discriminatory enforcement." *United States v. Williams*, 553

20  U.S. 285, 304 (2008).

21      And although the statutory text of the LPA Sections does not expressly define

22  the term "bona fide" in the context of a "bona fide labor organization," that term is

23  not vague for at least three reasons. First, the term "bona fide" has a well

24  understood and common meaning: "authentic" or "genuine."[12] Second, the LPA

25  Sections establish an administrative procedure to determine whether a labor

---

26  [11] Indeed, California's state-law definition of "labor organization" mirrors the
definition of "labor organization" in federal law. *See* 29 U.S.C. § 152(5).

27  [12] *See, e.g.*, "*Bona fide*." Merriam-Webster.com Dictionary, Merriam-
Webster, https://www.merriam-webster.com/dictionary/bonafide. Accessed 14 Dec.

28  2023.

1    organization is "bona fide." Cal. Bus. & Prof. Code § 26051.5(a)(5)(D); *see Vill. of*

2    *Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982)

3    (recognizing that the opportunity for further clarification "by resort to an

4    administrative process" weighs against the conclusion that a law is impermissibly

5    vague). Third, California's Agricultural Relations Board has in fact already used

6    this administrative procedure to further refine the meaning of "bona fide labor

7    organization": a "bona fide labor organization" is a labor organization

8    "demonstrating a sincere and good faith intent to organize and represent employees

9    as a collective bargaining representative, including the capacity or ability to do so."

10   Case No. 2023-LPA-001, 49 ALRB No. 3, at p. 5 (July 6, 2023) (citation and

11   quotation marks omitted).

12       Plaintiff also contends that the LPA Sections are impermissibly vague because

13   they do not set forth a dispute resolution process. FAC, ¶ 38. Even assuming the

14   lack of a dispute resolution process could render an otherwise valid law

15   impermissibly vague, this concern is unfounded. An LPA is a contract; like other

16   contracts, its terms can be negotiated, refined, and enforced within statutory limits.

17   *See, e.g., Richard A. Epstein, In Defense of the Contract at Will*, 51 U. Chi. L. Rev.

18   947 (1984). The LPA Sections need not define every term, or otherwise impose

19   mandatory requirements as to every aspect, of every LPA. Rather, commercial

20   cannabis licensees like Plaintiff may negotiate additional provisions, such as a

21   dispute resolution process, as long as those provisions are consistent with the

22   minimum requirements of state law.

23       **4.    Plaintiff Fails to State an NLRA Preemption Claim**

24       Finally, Plaintiff fails to state a preemption claim under the NLRA. Although

25   the NLRA has no express preemption provision, the "Supreme Court has

26   recognized two implicit preemption mandates: *Garmon* preemption and *Machinists*

27   preemption." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 963

28   (9th Cir. 2016) (citing *San Diego Bldg. Trades Council, Millmen's Union Local*

18

1    *2020 v. Garmon*, 359 U.S. 236 (1959); *Int'l Ass'n of Machinists and Aerospace*

2    *Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976)). Under these

3    preemption doctrines, "two categories of state action are implicitly preempted: (1)

4    laws that regulate conduct that is either protected or prohibited by the NLRA

5    (*Garmon* preemption), and (2) laws that regulate in an area Congress intended to

6    leave unregulated or controlled by the free play of economic forces (*Machinists*

7    preemption)." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir.

8    2018). Neither doctrine applies to the LPA Sections, as they do not require any

9    employer to cede a federally protected right, alter any terms or conditions of

10   employment, or enter into a collective-bargaining agreement.

11                    **i.    The LPA Sections Are Not Preempted Under *Garmon***

12         *Garmon* preemption protects the primary jurisdiction of the National Labor

13   Relations Board (NLRB) to administer and enforce the NLRA. Under *Garmon*,

14   states may not regulate activities that are protected or arguably protected by Section

15   7 of the NLRA, 29 U.S.C. §157 (which grants certain rights to employees) or

16   prohibited or arguably prohibited by Section 8 of the NLRA, 29 U.S.C. §158

17   (which prohibits certain activities as unfair labor practices). *See Idaho Bldg. and*

18   *Const. Trades Council v. Inland Pac. Chapter of Associated Builders and*

19   *Contractors, Inc.*, 801 F.3d 950, 956-57 & n.5 (9th Cir. 2015).

20         Contrary to Plaintiff's claims, the LPA Sections do not interfere with the

21   integrated scheme of regulation or disrupt the balance of power between labor and

22   management. FAC, ¶¶ 27, 31. There is not a protected or even arguably protected

23   right under Section 7 of the NLRA to negotiate a LPA. Nor does an employer

24   violate Section 8 by either refusing or agreeing to enter into a LPA with a particular

25   union. The only kind of bargaining implicated in Sections 7 and 8 of the NLRA is

26   "collective bargaining in respect to rates of pay, wages, hours of employment, or

27   other conditions of employment" with the exclusive representative selected by a

28   majority of the employees. 29 U.S.C. § 159(a); §§ 158(a)(5), 158(b)(3). The LPA

19

1    Sections do not require employees to unionize, or engage in collective bargaining,

2    once the LPA has been signed. On the contrary, the LPA Sections specifically

3    disavow any effort to "mandate a particular method of election or certification of

4    the bona fide labor organization." Cal. Bus. & Prof. Code § 26001(ab).

5        Plaintiff focuses primarily on NLRA Section 8(c) (29 U.S.C. § 158(c)) in

6    asserting preemption. FAC, ¶¶ 54-55. However, as discussed above (*see supra*, Part

7    IV.D.2), it is clear that the LPA Sections do not restrain employers from non-

8    coercive speech about unionization. Nor do the LPA Sections threaten employers

9    with punishment for engaging in non-coercive speech. Neither do the LPA Sections

10   frustrate or prohibit conduct permitted nor rights guaranteed to employers under the

11   NLRA, and are not preempted under *Garmon*.

12        **ii.    The LPA Sections Satisfy an Exemption to *Garmon***

13       Assuming arguendo that this Court finds a conflict between the LPA Sections

14   and the NLRA under *Garmon*, an exception to *Garmon* applies here. Even under

15   *Garmon*, states retain their power to regulate subject matter that touches "interests

16   so deeply rooted in local feeling and responsibility that, in the absence of

17   compelling congressional direction, we cannot infer that Congress has deprived the

18   state of the power to act." *Garmon*, 359 U.S. at 244. Determining whether conduct

19   is "so deeply rooted in local feeling and responsibility," entails a sensitive

20   balancing of the state's interest against any potential harm to the federal regulatory

21   scheme. *Operating Engineers v. Jones*, 460 U.S. 669, 676 (1983).

22       Here, it is hard to imagine a case in which the regulated conduct touches an

23   interest more deeply rooted in local feeling and responsibility than California's

24   state-regulated cannabis industry. As discussed above (*see supra*, Part IV.B),

25   California's regulatory scheme is "deliberate and extensive"; its interests are "clear

26   and substantial." *Peridot Tree*, 2022 WL 10629241, at *6, *8. For decades, illegal

27   cannabis businesses operated in California without either federal or state

28   regulation—and that underground economy was plagued by labor exploitation

1   issues, which California is now working to redress. Conversely, cannabis remains
2   completely illegal as a matter of federal law. This only further underscores the
3   importance of state regulation in this context: it is far from obvious that federal
4   regulators can successfully apply ordinary labor regulations in an industry where
5   everyone (including workers and other potential whistleblowers) remains at risk of
6   federal criminal prosecution. Indeed, to the extent Congress has responded to state
7   regulation of the cannabis industry, Congress has demonstrated respect for such
8   state regulation—shielding state-legal medical cannabis businesses from federal
9   prosecution if, and only if, they "strictly comply with all state-law conditions."
10  *McIntosh*, 833 F.3d at 1178.

11                    **iii.   The LPA Sections Are Not Preempted Under *Machinists***
12          Likewise, the LPA Sections are not preempted by the *Machinists* doctrine.
13  That doctrine is based on the recognition that Congress intentionally left certain
14  aspects of labor-management relations "unregulated," to be "controlled by the free
15  play of economic forces." *Machinists*, 427 U.S. at 140.

16          But federal law does not intend an "unregulated" cannabis industry "controlled
17  by the free play of economic forces," for the same reasons that federal law did not
18  intend the existence of the illegal cannabis market that existed prior to California's
19  deliberate, incremental effort to regulate cannabis in a way that protects the public
20  interest. As discussed, the cannabis industry is illegal as a matter of federal law.
21  This blanket criminal prohibition is diametrically opposed to the free-market
22  attitude embodied by *Machinists*.

23          At a minimum, it is far from clear that Congress intended to preserve cannabis
24  businesses' unregulated market power—and state law should not be held to be
25  preempted "unless that was the clear and manifest purpose of Congress." *Wyeth v.*
26  *Levine*, 555 U.S. 555, 565 (2009); *see also Bldg. & Const. Trades Council v.*
27  *Associated Builders & Contractors*, 507 U.S. 218, 224 (1993) ("Consideration
28  under the Supremacy clause starts with the basic assumption that Congress did not

1  intend to displace state law."). Here, as mentioned, Congress has demonstrated

2  respect for state regulation of the cannabis industry—shielding state-legal medical

3  cannabis businesses from federal prosecution if, and only if, they "strictly comply

4  with all state-law conditions." *McIntosh*, 833 F.3d at 1178. Such "evidence of

5  Congress' reluctance to limit the States' authority in this area" further undermines

6  the case for NLRA preemption. *N.Y. Tel. Co. v. Dep't of Labor*, 440 U.S. 519, 536

7  (1979).

8  **V.   CONCLUSION**

9        For the foregoing reasons, the Court should dismiss the Attorney General, and

10  should abstain or dismiss as to the remainder of Plaintiff's FAC.

11  Dated:  December 22, 2023                    Respectfully submitted,

12                                               ROB BONTA
                                                 Attorney General of California
13                                               HARINDER K. KAPUR
                                                 Senior Assistant Attorney General
14                                               JOSHUA B. EISENBERG
                                                 Supervising Deputy Attorney General
15

16

17

18                                               GREGORY M. CRIBBS
                                                 Deputy Attorney General
19                                               *Attorneys for Defendants*
                                                 *Rob Bonta, Attorney General of*
20                                               *California and Nicole Elliott,*
                                                 *Director of the Department of*
21                                               *Cannabis Control*

22

23

24

25

26

27

28  SA2023803255
    UTM MTD FAC 12222023.docx

Defendants' Motion to Dismiss FAC (3:23-cv-01924-TWR-AHG)

## CERTIFICATE OF SERVICE

Case Name:   **Urban Therapies**                    No.      **3:23-cv-01924-TWR-AHG**
                **Manufacturing, LLC v. DCC,**
                **et al.**

I hereby certify that on <u>December 22, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>December 22, 2023</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| **Dennis J Hayes**<br>**Hayes and Cunningham, LLP**<br>**5925 Kearney Villa Road, Suite 201**<br>**San Diego, CA 92123** | **Dennis J. Hayes**<br>**Hayes, Ortega & Sanchez, LLP**<br>**3625 Ruffin Road, Suite 300**<br>**San Diego, CA 92123** |
| **Michael G. Pedhirney**<br>**Littler Mendelson PC**<br>**333 Bush Street, FL 34**<br>**San Francisco, CA 94104** | |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 22, 2023</u>, at Los Angeles, California.

| | |
|---|---|
| <u>Beth Gratz</u> | <u>/s/ Beth Gratz</u> |
| Declarant | Signature |

SA2023803255/37752840